UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUMEN TECHNOLOGIES, INC., f/k/a CENTURYTEL, INC., a Louisiana corporation<br><br>*Plaintiff,*<br><br>v.<br><br>TELEPHONE USA INVESTMENTS, INC. a Delaware corporation; and JOSEPH A. STROUD, an adult individual<br><br>*Defendants.* | Civil Action No. 23-cv-16484 |

## COMPLAINT

Plaintiff Lumen Technologies, Inc. f/k/a CenturyTel, Inc. ("**Lumen**") brings this Complaint against Defendants Telephone USA Investments, Inc. ("**Investments**") and Joseph A. Stroud ("**Mr. Stroud**") for avoidance of certain fraudulent transfers made in violation of the Illinois Uniform Fraudulent Transfer Act and other relief, and in support thereof states as follows:

## PARTIES

1. Lumen is a Louisiana corporation with its principal place of business in Monroe, Louisiana. Lumen is a citizen of the State of Louisiana.

2. Investments is a Delaware corporation with its principal place of business at 18600 South Oak Park Avenue, Tinley Park, Illinois 60447. Investments has two shareholders: (1) Mr. Stroud, who holds a 0.5% ownership interest, and (2) the Joseph A. Stroud Family Trust, which holds a 99.5% ownership interest. The beneficiaries of that trust are Mr. Stroud's daughters. Investments is a citizen of the States of Delaware and Illinois.

1

3. Mr. Stroud is an adult resident and citizen of Illinois. Mr. Stroud served as the Chairman, President, and sole director of Investments at all times relevant to this action.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Investments because Investments' principal place of business is located in Illinois.

6. This Court has personal jurisdiction over Mr. Stroud because he is domiciled in Illinois. Alternatively, this Court has personal jurisdiction over Mr. Stroud because, at all relevant times, he controlled Investments, an entity with its principal place of business and operations in Illinois. This included having access to and control of the bank accounts of this Illinois entity.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Northern District of Illinois, and all defendants reside in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

8. Investments is a member of TelUSA Holdings, LLC (the "**LLC**"), holding a 10% economic interest.

9. Lumen is also a member of the LLC, holding a 90% economic interest.

10. Pursuant to a resolution of the board of directors of the LLC in the form of a unanimous written consent dated December 18, 2019, the board unanimously authorized a distribution in an aggregate amount of $3,412,000 to all members of the LLC, based on *pro rata* membership interests in the LLC (the "**Unanimous Consent**"). Two of the LLC's board members

signing the Unanimous Consent included Mr. Stroud and his wife. A true and correct copy of the Unanimous Consent is attached hereto as **Exhibit A**.

11. The *pro rata* share of the December 2019 distribution that Investments was due to receive was $341,200, subject to an agreed-upon $75,000 withholding for payment of taxes. Thus, the agreed-upon net distribution to be paid to Investments was $266,200.

12. On December 19, 2019, prior to receiving funds from the distribution, Investments confirmed via email that its *pro rata* participation from the distribution, following the agreed tax withholding, was to be in the amount of $266,200. A true and correct copy of this email correspondence is attached hereto as **Exhibit B**.

13. On December 20, 2019, Investments received payment of funds via wire transfer to its Charles Schwab account in the amount of $3,412,000. This payment was made due to a clerical error. Investments received the entire aggregate amount of the December 2019 distribution from the LLC, including Lumen's *pro rata* share, even though Investments was entitled to and previously agreed to receive only $266,200 based on its *pro rata* membership interest and the agreed tax withholding.

14. The amount of the overpayment Investments received in error following the December 2019 distribution was $3,145,800 (i.e., $3,412,000 less $266,200). Thus, Investments received Lumen's 90% share of the LLC's December 2019 distribution ($3,070,800) and the amount of its agreed-upon tax payment ($75,000).

15. Both Investments and Mr. Stroud knew that the payment exceeded that to which Investments was entitled.

16. On December 27, 2019, Investments, through its Chairman and President, Mr. Stroud, notified Lumen that Investments had received the entire December 2019 distribution

3

totaling $3,412,000. That same day, Lumen requested return of the net overpayment amount and provided wiring instructions for Investments to do so. True and correct copies of the aforementioned correspondence are attached hereto as **Exhibit C**.

17. Investments and its representatives initially indicated that they would return the overpayment. However, notwithstanding Lumen's repeated demands for the same, no repayment ever occurred.

18. On December 8, 2021, Lumen initiated arbitration proceedings with the American Arbitration Association, seeking to recover the $3,145,800 overpayment received by Investments in December 2019. Lumen asserted claims of breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and "money had and received."

19. Following the initiation of the arbitration proceeding, Lumen and Investments entered into further discussions about resolution of their dispute, including the overpayment issue.

20. As a result of these discussions, Investments and Lumen entered into a contract evidenced by a written agreement dated February 22, 2022 (the "**Letter Agreement**"). As provided in the Letter Agreement, in exchange for deferring and delaying arbitration proceedings and other actions to enforce Investments' obligations with respect to the overpayment, Investments committed to do the following:

 a) Pay Lumen the full $3,412,000 of the distribution Investments received, plus three percent (3.0%) interest, by May 31, 2022;

 b) If desired, sign a note and deed of trust secured by real estate in favor of Lumen in order to secure Investments' promise to pay.

21. Investments failed to perform its obligations under the Letter Agreement in all respects, including, without limitation, its obligation to pay Lumen $3,412,000, plus 3% interest,

by May 31, 2022. Consequently, on July 27, 2022, Lumen amended its statement of claims in the arbitration proceeding to include, *inter alia*, a claim for breach of contract based on Investments' failure to perform under the Letter Agreement.

22. On March 11, 2023, following a final, in-person hearing before a panel of three arbitrators mutually selected by Investments and Lumen, the arbitration panel found for Lumen on all counts. Regarding Lumen's claim for breach of the Letter Agreement, the arbitration panel awarded Lumen $3,412,000 in damages plus interest at the rate of 3% accruing from February 22, 2022 until the award is paid in full.

23. On September 21, 2023, the arbitration panel's award was confirmed in the action captioned *Telephone USA Investments, Inc. v. Lumen Technologies, Inc.* in the United States District Court for the Northern District of Illinois, Case No. 22-cv-2260 (the "**Related Litigation**"). Judgment was subsequently entered in the Related Litigation in favor of Lumen for, *inter alia*, $3,412,000 in damages plus interest at the rate of 3% accruing from February 22, 2022 until the award is paid in full. True and correct copies of the Memorandum Opinion and Order and Judgment in a Civil Case entered in the Related Litigation are attached hereto as **Group Exhibit D**.

24. During the above-referenced arbitration proceeding, Lumen discovered that various transfers had occurred from Investments to Mr. Stroud following Investments' receipt of the December 20, 2019 overpayment. These include:

    a) A transfer of $1,412,000 from Investments' Charles Schwab account to Mr. Stroud on December 24, 2019.

    b) A transfer of $700,000 from Investments' Charles Schwab account to Mr. Stroud on October 20, 2020.

  c) A transfer of $400,000 from Investments' Charles Schwab account to Mr. Stroud on November 2, 2020.

  d) A transfer of $400,000 from Investments' Charles Schwab account to Mr. Stroud on October 19, 2022.

25. The transfers referenced in Paragraph 24 were made for the benefit of Mr. Stroud. He used the funds Investments received to pay personal expenses and debts, including, *inter alia*, a $1,276,718 federal income tax lien.

26. As set forth below, each of these transfers constitutes a fraudulent transfer actionable under the Illinois Uniform Fraudulent Transfer Act ("**IUFTA**"), 740 ILCS 160/1 *et seq*.

## COUNT I
### To Avoid and Recover Fraudulent Transfers Made in Violation of § 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act

27. Lumen re-alleges and incorporates the preceding Paragraphs as if fully set forth herein.

28. Lumen is a "creditor" under the IUFTA because it had a "claim" against Investments for $3,145,800 immediately following the December 20, 2019 overpayment, which has since been reduced to a judgment in excess of that amount. *See* 740 ILCS 160/2(c), (d).

29. Investments is a "debtor" under the IUFTA because it is—and has been since the December 20, 2019 overpayment—liable to Lumen on the "claim" referenced in Paragraph 28. *See* 740 ILCS 160/2(f).

30. After receiving the $3,145,800 overpayment on December 20, 2019, and thus becoming a "debtor" with respect to Lumen, Investments made a series of transfers to Mr. Stroud with actual intent to hinder, delay, or defraud Lumen. These transfers, detailed in Paragraph 24, totaled $2,912,000.

31. The circumstances surrounding the transfers establish that they were made with actual intent to hinder, delay, or defraud Lumen pursuant to 740 ILCS 160/5(a)(1). Specifically,

   a) The transfers were made to and for the benefit of Mr. Stroud, an "insider" of Investments. *See* 740 ILCS 160/5(b)(1); *see also* 740 ILCS 160/2(g)(2)(A)-(C).

   b) Investments, through Mr. Stroud and vice versa, retained possession or control of the amounts transferred immediately following the transfers. *See* 740 ILCS 160/5(b)(2).

   c) Investments and Mr. Stroud concealed their transfers; they were not disclosed to Lumen until December 2022, and even then, only after a motion to compel was filed, briefed, argued, and granted in the arbitration proceeding. *See* 740 ILCS 160/5(b)(3).

   d) Investments was put on notice that its refusal to return the $3,145,800 overpayment would have legal consequences, including, without limitation, an action for recovery, before the transfers referenced in subparagraphs (b)-(d) of Paragraph 24 were made. *See* 740 ILCS 160/5(b)(4).

   e) The transfers to Mr. Stroud were made for less than reasonably equivalent value; in fact, they were made for no consideration at all. *See* 740 ILCS 160/5(b)(8).

   f) Investments became insolvent shortly after the first, December 24, 2019, transfer to Mr. Stroud. *See* 740 ILCS 160/5(b)(9). At no point thereafter did the sum of Investments' assets exceed all its debts, including the $3,145,800 overpayment. *See* 740 ILCS 160/3(a); 740 ILCS 160/2(c), (e).

   g) The first transfer of $1,412,000 on December 24, 2019, to Mr. Stroud occurred four days after Investments received the $3,145,800 overpayment, and thus occurred

four days after Investments incurred a substantial debt. *See* 740 ILCS 160/5(b)(10).

32. The foregoing "badges of fraud" raise a strong inference of fraudulent intent on the part of Defendants.

33. Because the transfers delineated in Paragraph 24 of the Complaint were fraudulent as to Lumen under Section 5(a)(1) of the IUFTA, Lumen is entitled to the remedies afforded by 740 ILCS 160/8 and 160/9.

WHEREFORE, Lumen respectfully requests that this Court enter judgment in its favor and against Mr. Stroud—the transferee and party for whose benefit the transfers were made—as follows:

    A. Avoiding each of the fraudulent transfers to Mr. Stroud pursuant to 740 ILCS 160/8(a)(1);

    B. Awarding in favor of Lumen a monetary judgment against Mr. Stroud in an amount equal to the value of all the fraudulently transferred funds pursuant to 740 ILCS 160/9(b); and

    C. Providing for any additional relief at law or in equity this Court deems just and proper, including, without limitation, punitive damages, pre-judgment interest, and attorneys' fees.

## COUNT II
### To Avoid and Recover Fraudulent Transfers Made in Violation of § 5(a)(2) of the Illinois Uniform Fraudulent Transfer Act

34. Lumen re-alleges and incorporates the preceding Paragraphs as if fully set forth herein.

35. Section 5(a)(2) of the IUFTA provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the

obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . .

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; **or**

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a)(2) (emphasis added).

36. Lumen's right to be reimbursed for the $3,145,800 overpayment (*i.e.*, Lumen's "claim") arose before the transfers referenced in Paragraph 24 of the Complaint were made.

37. Investments made the transfers to Mr. Stroud without receiving reasonably equivalent value in exchange therefor; in fact, the transfers were made for no consideration at all.

38. At the time each transfer was made, Investments knew or reasonably should have known that it would incur debts beyond its ability to pay as they became due. Specifically, Investments knew or reasonably should have known that the funds remaining in its account following the transfers were insufficient to repay the $3,145,800 overpayment and a prospective judgment associated therewith.

39. Additionally, at the time of each transfer, Investments was engaged in a transaction or business for which its remaining assets were unreasonably small in relation to the transaction or business.

40. As Investments' chairman, president, and sole director having personal knowledge of the state of Investments' financial condition derived from those positions of trust and authority, Mr. Stroud did not take the transfers from Investments in good faith and/or for reasonably equivalent value.

41. Accordingly, the transfers referenced in Paragraph 24 of the Complaint were

9

fraudulent as to Lumen under Section 5(a)(2) of the IUFTA, and Lumen is entitled to the remedies afforded by 740 ILCS 160/8 and 160/9.

WHEREFORE, Lumen respectfully requests that this Court enter judgment in its favor and against Mr. Stroud—the transferee and party for whose benefit the transfers were made—as follows:

A. Avoiding each of the fraudulent transfers to Mr. Stroud pursuant to 740 ILCS 160/8(a)(1);

B. Awarding in favor of Lumen a monetary judgment against Mr. Stroud in an amount equal to the value of all the fraudulently transferred funds pursuant 740 ILCS 160/9(b); and

C. Providing for any additional relief at law or in equity this Court deems just and proper, including, without limitation, punitive damages, pre-judgment interest, and attorneys' fees.

### COUNT III
### To Avoid and Recover Fraudulent Transfers Made in Violation of § 6(a) of the Illinois Uniform Fraudulent Transfer Act

42. Lumen re-alleges and incorporates the preceding Paragraphs as if fully set forth herein.

43. Section 6(a) of the IUFTA provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS 160/6(a).

44. Lumen's right to be reimbursed for the $3,145,800 overpayment (*i.e.*, Lumen's

"claim") arose before the transfers referenced in Paragraph 24 of the Complaint were made.

45. Investments made the transfers to Mr. Stroud without receiving a reasonably equivalent value in exchange therefor; in fact, the transfers were made for no consideration at all.

46. Investments became insolvent following its first, December 24, 2019, transfer to Mr. Stroud. *See* 740 ILCS 160/5(b)(9). At no point thereafter did the sum of Investments' assets exceed all its debts, including the $3,145,800 overpayment. *See* 740 ILCS 160/3(a); 740 ILCS 160/2(c), (e).

47. Therefore, the transfers referenced in Paragraph 24 of the Complaint were fraudulent as to Lumen under Section 6(a) of the IUFTA, and Lumen is entitled to the remedies afforded by 740 ILCS 160/8 and 160/9.

WHEREFORE, Lumen respectfully requests that this Court enter judgment in its favor and against Mr. Stroud—the transferee and party for whose benefit the transfers were made—as follows:

A. Avoiding each of the fraudulent transfers to Mr. Stroud pursuant to 740 ILCS 160/8(a)(1);

B. Awarding in favor of Lumen a monetary judgment against Mr. Stroud in an amount equal to the value of all the fraudulently transferred funds pursuant to 740 ILCS 160/9(b); and

C. Providing for any additional relief at law or in equity this Court deems just and proper, including, without limitation, punitive damages, pre-judgment interest, and attorneys' fees.

## COUNT IV
**Request For Permanent Injunction Against Disposition by Investments or Mr. Stroud**

48. Lumen re-alleges and incorporates the preceding Paragraphs as if fully set forth

herein.

49. The IUFTA provides that a creditor may obtain, "subject to applicable principles of equity and in accordance with applicable rules of civil procedure,. . . an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." 740 ILCS 160/8(a)(3).

50. "A party seeking permanent injunctive relief must demonstrate: (1) a clear and ascertainable right in need of protection; (2) irreparable harm if injunctive relief is not granted; (3) no adequate remedy at law; and (4) success on the merits." *Hasco, Inc. v. Roche*, 299 Ill. App. 3d 118, 126, 700 N.E.2d 768, 774 (1998). "In addition, a court considering injunctive relief should balance the equities." *Cnty. of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 538, 818 N.E.2d 425, 433 (2004).

51. Under the IUFTA, Lumen has a substantive interest in combatting efforts that would impede its recovery of assets fraudulently transferred to evade repaying the December 2019 overpayment. *See Delta Med. Sys. v. Mid-Am. Med. Sys., Inc.*, 331 Ill. App. 3d 777, 788–89, 772 N.E.2d 768, 779 (2002) ("To show a clear and ascertainable right, [the movant] must raise a fair question that it has a substantive interest recognized by statute or common law.").

52. Considering the dilatory and obstructive tactics Defendants have employed to drain Investments of assets sufficient to satisfy its outstanding debt, it is highly likely that given the opportunity, Defendants will take additional steps to make the once-transferred assets and other, not-yet-transferred assets wholly unavailable through fraudulent means. Such irreparable harm can only be avoided by the issuance of a permanent injunction preserving the status quo and establishing controls to prevent further transfers until the already-fraudulently-transferred assets can be recouped.

53. Relatedly, once assets are further dissipated or too far removed from this Court's jurisdiction, Lumen would lack an adequate remedy at law for recouping or levying on the assets fraudulently transferred. There is thus no remedy "as practical and efficient to the ends of justice and its prompt administration as" a permanent injunction here. *See C.J. v. Dep't of Hum. Servs.*, 331 Ill. App. 3d 871, 891, 771 N.E.2d 539, 557 (2002) (quoting *Lucas v. Peters*, 318 Ill. App. 3d 1, 16, 741 N.E.2d 313, 325 (2000)).

54. Finally, Lumen has preliminarily demonstrated by virtue of the preceding Paragraphs—and will definitively establish during the course of this proceeding—that Defendants violated Sections 5(a)(1), 5(a)(2), and 6(a) of the IUFTA.

55. To the extent Defendants may experience harm from the entry of a permanent injunction, such harm is vastly outweighed by the additional harm Lumen would suffer in the event no injunction is entered. Because injunctive relief is only sought to preserve the status quo and prevent further fraudulent disposition of assets, Defendants would remain free to conduct legitimate business.

56. Injunctive relief would also serve the public interest, as the public has an interest in seeing that parties be held accountable when they fraudulently transfer assets in hopes of avoiding legally owed debts.

WHEREFORE, Lumen respectfully requests that this Court enter a permanent injunction in its favor and against the Defendants prohibiting Defendants from disposing of any property that could be recovered from Investments and/or Mr. Stroud under Counts I-III to repay the December 2019 overpayment.

Dated: December 4, 2023  Respectfully submitted,

LUMEN TECHNOLOGIES, INC. F/K/A CENTURYTEL, INC.

*/s/ Jerry L. Switzer, Jr.*

Phillip S. Sykes (*pro hac vice application forthcoming*)
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
(601) 948-5711 Phone
(601) 985-4500 Facsimile
phillip.sykes@butlersnow.com

Jerry L. Switzer, Jr.
IL ARDC No. 6210229
Nathan B. Grzegorek
IL ARDC No. 6306078
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900 Phone
(312) 819-1910 Facsimile
jswitzer@polsinelli.com
ngrzegorek@polsinelli.com
chicagodocketing@polsinelli.com

92264037.3